IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ANNIE PATTON                                                                                       PLAINTIFF

VS.                                      CASE NO. 03-CV-1169

THE CITY OF CAMDEN, ARKANSAS,
A Public Corporation; and
JON MITCHELL, In His
Individual Capacity                                                                             DEFENDANTS

# MEMORANDUM OPINION

Plaintiff brings this action against the Defendants, the City of Camden, Arkansas, and Jon Mitchell, a former Camden Police Officer, pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983 and Arkansas tort law. She claims that her constitutional rights were violated when Officer Mitchell used excessive force in arresting her on March 18, 2003. She also contends that Officer Mitchell's actions subjected her to a battery, as defined by Arkansas law, for which Mitchell and his employer, the City of Camden, are liable. The Plaintiff seeks money judgments against the City of Camden, Arkansas, and Officer Jon Mitchell, in his individual capacity. This matter was tried to the Court without a jury on October 11, 2005. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. The Court now enters its findings of facts and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

# FINDINGS OF FACT

## BACKGROUND

On March 18, 2003, Plaintiff's daughter, Kathy Smith, and Smith's three-year-old daughter, Shamya, were at their residence in West Camden Heights in Camden, Arkansas. While at the residence, Kathy Smith left her daughter outside on a small front porch and went into the house to make a telephone call. When she returned, Shamya was gone. Smith called the police and reported the child missing. Camden Police Officer Jon Mitchell, his training officer, Brett Waddell, and Officer Gary Maskell responded to the call. The three officers searched the residence and the surrounding neighborhood but found nothing.

In the succeeding moments, Roderick Smith, the child's father who did not live at the residence, arrived with the child. He had driven by the residence earlier, seen his daughter on the front porch, picked her up and took her to McDonalds without informing Kathy Smith, the child's mother.

Prior to Roderick Smith's arrival, Kathy Smith had called her sister, Stephanie Patton, and told her Shamya was missing. Stephanie Patton left work to come to the residence. Meanwhile, the Plaintiff, Annie Patton, learned of her granddaughter's disappearance and she and another daughter, Cynthia Patton, rushed to the residence, all three arriving within minutes of each other.

Moments before the Plaintiff and her two daughters arrived, Roderick Smith arrived with Shamya. He was immediately confronted by an irate and worried Kathy Smith and they began to argue about why he had taken the child without permission.

When Plaintiff and her daughters arrived, they approached the residence around which

were gathered Kathy Smith, Roderick Smith and two of the police officers. The Plaintiff learned, probably from the officers, that the child had been with her father, that he had taken her to McDonalds and returned. Plaintiff was upset and approached Roderick Smith, who was standing on the steps leading to the residence's porch, and insisted on knowing why he had taken the child without informing anyone. The testimony from the witnesses, which included the police officers and two of Plaintiff's daughters, varies about what happened next. The testimony ranges from the Plaintiff angrily pushing or striking Roderick Smith in the chest causing him to fall to the steps to Roderick stumbling backwards over the child's tricycle which was on the porch. Either way, it is clear that at this point, Officer Mitchell rushed forward and attempted to grab Plaintiff's arms in order to keep her from striking Roderick Smith again. They then either both fell to the ground or Officer Mitchell flung Plaintiff to the ground falling on top of her. While they were both on the ground, Officer Mitchell attempted to cuff the Plaintiff's wrists.

While on the ground, Officer Mitchell did secure and cuff Plaintiff's right wrist. During this process, all of the family members including Roderick Smith, were yelling and screaming for Officer Mitchell to let the Plaintiff up saying that she suffered from a bad back. Within seconds or minutes, no more than four minutes, Officer Mitchell got up and helped the Plaintiff to her feet. He then uncuffed her right wrist. During this exchange, a crowd of neighbors and others had gathered. All of the on-looking witnesses describe the scene as very emotional and confusing.

Officer Maskel took Plaintiff into the residence and attempted to comfort her. An ambulance was called and Plaintiff was taken to the emergency room, treated and released. The Plaintiff was charged with disorderly conduct. These charges were later dismissed.

Officer Waddell testified as to the yelling and confusion of the situation. He described the situation as extremely explosive and indicated that he was afraid that the hostilities would escalate. Officer Waddell testified that the Plaintiff struck Roderick Smith in the chest and that Smith fell or stumbled backwards. He testified that Officer Mitchell attempted to restrain the Plaintiff and, although he turned his attention toward Cynthia Patton, he turned and saw both Officer Mitchell and the Plaintiff on the ground. Waddell did recall that the Plaintiff was resisting Officer Mitchell's attempts to restrain her. He also recalls Officer Mitchell sitting on Plaintiff's hips while she was on the ground.

Officer Maskell testified that Plaintiff struck Roderick Smith in the chest causing him to fall back. He also testified that Officer Mitchell tried to restrain the Plaintiff by putting his arms around her and that she was trying to get loose. He testified that he looked away and when he looked back Officer Mitchell and the Plaintiff were on the ground. He did not recall seeing Officer Mitchell's knee in Plaintiff's back. Officer Maskell also indicated that there was a lot of commotion going on during the entire incident and that Plaintiff was actively resisting Mitchell while they were on the ground.

Others, including Roderick Smith, testified that Officer Mitchell had his knee in Plaintiff's back while he was attempting to cuff her. Diane Smith, a neighbor who had come to the residence, recalled the incident and noted that the Plaintiff was upset and that everyone was fussing and arguing. She testified that Officer Mitchell came up to the Plaintiff and told her not to hit anyone, that he grabbed her arm and that Plaintiff and Mitchell fell to the ground. Lisa Watson, another witness, testified that the Plaintiff and Roderick Smith had gotten into it and that Plaintiff took a swing at him. She remembered that the Plaintiff and Officer Mitchell fell to

the ground and that he helped her up. She also testified that there was a lot of yelling by both Plaintiff and the others present.

Plaintiff alleges that the force used by Officer Mitchell caused her to suffer severe injuries, including a rotator cuff tear and knee injuries, all of which required surgery. She also claims a ruptured breast implant. Prior to her claimed injuries, Plaintiff had some preexisting injuries/conditions. She suffered from arthritics, malaise and a ruptured disc. She was considered disabled and had been drawing social security benefits since 1997.

## CONCLUSIONS OF LAW

In this case, Plaintiff claims that her constitutional rights were violated when Officer Mitchell used excessive force in arresting her on March 18, 2003.[1] She claims that the use of such force was in violation of the Fourth and Fourteenth Amendments to the United States Constitution, 28 U.S.C. § 1983, and Arkansas state law. Defendant Officer Mitchell claims that the force used by him was "reasonable" and that he is entitled to qualified immunity.

The Fourth Amendment prohibits arrests carried out by the use of excessive force. *See Crumley v. City of St. Paul,* 324 F.3d 1003, 1007 (8th Cir. 2003). However, at the same time, an arrest necessarily carries with it the right to use some degree of force or threat to effect it. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Therefore, in an excessive force claim, the Court must balance the degree of force used against the governmental interest of preserving the peace. *Id.*

Each claim is closely examined from the entire circumstances of the incident. Included

---

[1] Plaintiff does not claim that she was unlawfully arrested, therefore, she does not assert a claim for unlawful seizure.

in the inquiry is the severity of the crime at issue, the immediate threat to the safety of the officers or others, and the resistance to the arrest. The analysis of the Fourth Amendment right against unreasonable seizures is the "reasonable standard" and hangs on whether the officer's actions were "objectively reasonable" in light of all the facts and circumstances involved in the occurrence, without regard to his underlying intent or motivation. [2]

The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second decisions in situations that are tense, uncertain, and rapidly evolving. *Graham,* 490 U.S. at 396-97. Thus, the reasonableness of the officer's belief as to the appropriate amount of force to be used must be judged from that on-scene perspective. *Saucier,* 533 U.S. at 205 (citation omitted). It must be judged from the perspective of a reasonable officer on the scene rather than the 20/20 vision of hindsight. *Graham,* 490 U.S. at 396.

In the instant case, the Camden police were called to the residence of Kathy Smith who had lost her three-year-old child, Shamya. Kathy Smith also called her sister, who in turn called another sister who picked up the Plaintiff and all three came to the aid of Kathy Smith.

The officers searched the residence and surrounding neighborhood, but found no child. Shortly thereafter, the officers and Kathy Smith were gathered in the front yard of the residence when they learned that the child's father, Roderick Smith, had seen the child, picked her up and taken her to McDonalds. Kathy Smith and Roderick were in a heated discussion over Shamya when the Plaintiff arrived.

---

[2] An excessive force claim in the context of an arrest is analyzed under the Fourth Amendment's "objective reasonable standard," not under Fourteenth Amendment's substantive due process principles. *Saucier,* 533 U.S. at 204 (quoting *Graham v. Connor,* 490 U.S. 386, 388 (1989)).

When she arrived, Plaintiff was visibly upset about the disappearance of her grandchild and, after finding out what had occrued, she became ever more upset. She approached Roderick Smith and demanded to know why he had taken the child. The Plaintiff then either pushed or struck Roderick in the chest whereupon he fell or stumbled backwards. The officers were standing by and Officer Mitchell responded and quickly tried to restrain the Plaintiff by putting his arms around her. When Mitchell grabbed her, the Plaintiff began trying to get loose of his grasp. At this point, the Plaintiff and Officer Mitchell fell to the ground with the larger and heavier officer landing on top of the Plaintiff. While on the ground, the officer did manage to get one of the Plaintiff's wrists cuffed. During this time a crowd had gathered and Plaintiff was yelling for Mitchell to let her up and the sisters and Roderick Smith were yelling and screaming that Plaintiff had a bad back. Within minutes, Mitchell got up, helped Plaintiff to her feet and removed the handcuffs from the Plaintiff's wrist.

In looking closely at the facts and circumstances of this case, the Court believes that this was a rapidly evolving and serious situation involving a dispute between the Patton family members, in particular, the Plaintiff and Roderick Smith. Plaintiff was visibly upset and either pushed or struck Roderick in the chest causing him to fall. It was reasonable for Officer Mitchell to believe that the altercation between the Plaintiff and Roderick would continue to escalate and that the Plaintiff would possibly strike Roderick again. Therefore, it was entirely reasonable for Officer Mitchell to quickly move in to prevent any further attack on Roderick by the Plaintiff. And, once the Plaintiff began trying to resist Officer Mitchell's restraint, it was reasonable for him to use greater force in order to secure her. *See Crumley,* 324 F.3d at 1008.

Whether the amount of force used by Mitchell was reasonable depends on the

circumstances of the situation from Officer Mitchell's perspective. In this case, Mitchell was confronted with a very tense and volatile situation. It was clear that emotions were running very high, as evident by all the screaming and yelling at the scene and the crowd of neighbors that had gathered. As stated by the other officers, there was a lot of commotion and fear that the hostilities would escalate and the people on the scene would become involved. Pair this situation with the fact that the Plaintiff was actively resisting arrest, the Court does not believe that the force used by Officer Mitchell in his attempt to secure the Plaintiff and control the situation were objectively unreasonable. The Court finds that the Plaintiff's Fourth Amendment right to be free from excessive force during an arrest was not violated; therefore, her § 1983 claim based upon that right must fail.

Plaintiff also brings this § 1983 cause of action under the Fourteenth Amendment. Prior to *Graham,* the courts consistently found the excessive use of force by police officers unconstitutional under the Fourteenth Amendment. However, the Supreme Court made it clear in *Graham* that claims of excessive force were based upon the Fourth Amendment's prohibition against unreasonable seizures; not Fourteenth Amendment due process principles. Therefore, Plaintiff's § 1983 cause of action based upon the Fourteenth Amendment must also fail.

The Defendant Officer Mitchell claims that he is entitled to qualified immunity in this case. However, the issue of qualified immunity is somewhat mooted in this case. Qualified immunity is granted to shield an officer and protect him from civil liability if his actions do not violate clearly established constitutional rights of which a reasonable person would or should have known. *Kuha v. City of Minnetonka,* 365 F.3d 590, 601 (8th Cir. 2003). Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." *Saucier v.*

*Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 120 L.Ed.2d 272 (2001)(*quoting Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). This privilege is an immunity from suit rather than a mere defense to liability; and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell,* 472 U.S. at 526. As a result, a court should resolve the issue of qualified immunity at the earliest possible stage of litigation. *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir. 1989). This was not done in this case. Officer Mitchell did not seek a determination by the Court as to the issue of qualified immunity before trial and has already endured the burdens of a trial of this matter. However, both parties in their pre-trial disclosures and post-trial briefs contend that qualified immunity is still a viable issue. Hence, the Court will address it from the facts and evidence disclosed during the non-jury trial of this matter.

In resolving the question of qualified immunity, the Court must first decide if Officer Mitchell's conduct violated a constitutional right of the Plaintiff. *Saucier,* 533 U.S. at 201. If no constitutional right was violated there is no need to go further and the officer is entitled to qualified immunity. *Id.* Should, however, the Court determine that a constitutional right was violated, the next inquiry is to ask whether the constitutional right was clearly established in light of the specific context of the case, *i.e.,* whether a reasonable officer would have understood that his conduct was unlawful. *Kuha,* 365 F.3d at 602. The second inquiry shields the officer from suit only if his conduct was objectively reasonable in light of the circumstances and facts possessed by the officer at the time of the alleged violation. If the officer's conduct was reasonable he is then entitled to qualified immunity. *Saucier,* 533 U.S. at 205.

Here, based upon the evidence presented at the trial of this case, the Court has

determined that Plaintiff's constitutional right to be free from excessive force during an arrest was not violated. Therefore, there is no need for the Court to go further. Officer Mitchell is entitled to qualified immunity in this case.

Plaintiff also contends that Mitchell's actions subjected her to a battery, as defined by Arkansas law, for which Mitchell and his employer, the City of Camden, are liable. Plaintiff claims that the City of Camden is liable for Officer Mitchell's actions under the doctrine of *respondeat superior*. Under Arkansas law, liability under this doctrine attaches when an employee commits a foreseeable act within the scope of his employment. *Costner v. Adams, 82* Ark.App. 148, 154, 121 S.W.3d 164 (Ark.App., 2003). Plaintiff argues that the duties of a police officer entail the use of physical force. Therefore, it is fully foreseeable that a police officer would commit the intentional tort of battery and his employer would be liable for such tort. The Court does not agree. A police officer has authority to only use such force as is necessary to effect an arrest and no more. It is unforeseeable that an officer would use excessive force in effectuating an arrest unless his employer was on notice that the officer was prone to such tendencies. The City of Camden had no such notice here, therefore, it can not be liable under a *respondeat superior* theory for the battery allegedly committed against the Plaintiff by Officer Mitchell. Therefore, Plaintiff's claim against the City of Camden, Arkansas, must fail.

Plaintiff also claims that Officer Mitchell is liable to her for the intentional tort of battery. For an action to constitute a battery in Arkansas there must be wrongful or offensive physical contact with another through the intentional contact by the tortfeasor. *Costner v. Adams,* 82 Ark.App. at 156. Here, the Court can not say that Officer Mitchell's contact with the Plaintiff was wrongful. Police officers are justified is using physical force upon a person if the

officer believes the use of that force is necessary to effect an arrest or to defend himself or a third party while making an arrest.[3] *See* Ark. Code Ann. § 5-2-610; *Crouch v. Richards,* 212 Ark. 980, 982, 208 S.W.2d 460 (1958). In this case, Officer Mitchell put his arms around the Plaintiff in order to restrain her from striking Roderick Smith again. When Plaintiff began to struggle and try to get loose of Mitchell's grasp, he used additional force in an attempt to secure her and control the situation. The Court has found that the force used by Mitchell was reasonable and necessary in light of the volatile situation faced by the officers in Kathy Smith's front yard. His contact with the Plaintiff was not wrongful and, thus, is not a battery from which he can be held liable. Therefore, the Plaintiff's claim for battery against Officer Mitchell must also fail.

## **CONCLUSION**

For the reasons discussed herein above, the Court finds that the Defendants, the City of Camden, Arkansas, and Jon Mitchell, are entitled to judgment in their favor and against the Plaintiff, Annie Patton.

IT IS SO ORDERED, this 1st day of March, 2006.

                                                          /s/Harry F. Barnes
                                                         Hon. Harry F. Barnes
                                                         United States District Judge

---

[3] The Court notes that if police officers were not so protected, they would be unable to maintain the peace in our communities because they would never be able to effectuate an arrest without being liable for a battery.